Loren I. Thorson (AZ 018933)
STEGALL, KATZ & WHITAKER, P.C.
531 East Thomas Road, Suite 102
Phoenix, Arizona 85012
602.241.9221 voice
602.285.1486 fax
lthorson@skw-law.com
Attorney for Plaintiff

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| STRONG STUDENTS MOVING, INC., a Florida corporation;   SHAUN ROBINSON;<br><br>                    Plaintiffs,<br><br>vs.<br><br>COLLEGE HUNKS HAULING JUNK FRANCHISING, LLC, a Florida corporation (aka CHHJ Franchising LLC d/b/a College Hunks Hauling Junk); OMAR SOLIMAN and JANE DOE SOLIMAN; NICK FRIEDMAN and JANE DOE FRIEDMAN; DOE DEFENDANTS 1-10;<br><br>                    Defendants. | **Case No.**<br><br><br>**COMPLAINT** |

COMES NOW the Plaintiff Strong Students Moving, Inc., by and through counsel undersigned, and for its causes of action pertaining to the ownership and use of <collegehunksmoving.com> and against Defendant College Hunks Hauling Junk Franchising, LLC, and hereby alleges and claims as follows:

1

## I.    PARTIES, JURISDICTION AND VENUE

1. Plaintiff Strong Students Moving, Inc. (hereinafter "SSM") is a corporation organized under the laws of the State of Florida. Plaintiff's principal, Shaun Robinson registered the internet domain <collegehunksmoving.com> on its behalf and for its use. To the extent any defect exists in Plaintiff's corporate existence, its rights and claims as described herein devolve onto Plaintiff Shaun Robinson. Plaintiffs are referred to in the singular henceforward.

2. Defendant College Hunks Hauling Junk Franchising, LLC ("CHHJ") is reportedly a corporation organized under the laws of the State of Florida. CHHJ represented itself as a duly formed business entity in National Arbitration Forum proceedings referenced herein. To the extent that it is a defectively formed entity, such that the business has no identity separate from its principals, OMAR SOLIMAN and NICK FRIEDMAN and their marital communities are named in the alternative as such principals. All the acts alleged against CHHJ are alleged against the individuals in that event. Defendants are referred to in the singular henceforward.

3. Does 1-10 are persons or entities including undisclosed principals or related entities whose identities have not been ascertained. Plaintiff will amend as the facts warrant.

4. Both the Defendant and Plaintiff are subject to specific *in personam* jurisdiction before the Court, having consented to jurisdiction contractually in both ¶ 4 (k) of the Uniform Domain Name Registration Policy (UDRP) annexed hereto as **Annex** E (submission to mutual jurisdiction of subsequent court proceedings) and filing before the National Arbitration Forum (NAF) annexed collectively hereto as **Annex F** at Complaint ¶ (designation of mutual jurisdiction). Defendant selected the "location of the Registrar" of the domain in dispute; the Registrar is GoDaddy,com, LLC, located in Scottsdale, Arizona.

5. On May 17, 2012, the National Arbitration Forum (NAF), in non-binding arbitration, issued a written decision annexed hereto as **Annex G** (the "UDRP Action") ordering that the domain <collegehunksmoving.com> (the "Disputed Domain") be transferred to the Defendant CHHJ.

6. This Court has jurisdiction over the subject matter of this action pursuant to 15 U.S.C. § 1121 *et seq.*, and 28 U.S.C. §§ 2201 - 2202.  This Court also has jurisdiction under 28 U.S.C. §§ 1331, and 1338(a); and under Arizona's "long arm" statute, as well as through Fed R. Civ. P. 4(K)(1)(A).

7. Venue in this district is proper under 28 U.S.C. §§ 1391 and 1400(b), and under 15 U.S.C. §§ 1125.

## II.   PRELIMINARY STATEMENT

8. The Plaintiff in this case, through its principal Shaun Robinson, registered the Disputed Domain in good-faith while negotiating a business transaction with the Defendant at a time when the Defendant had no common law or registered trademark rights.  In May 2012, the Disputed Domain was ordered to be transferred from Plaintiff to Defendant following arbitration before the NAF, despite clear evidence that the Plaintiff registered the Disputed Domain in good-faith and that the Defendant hereto committed fraud in procuring its trademark by intentionally misrepresenting its first use in commerce date before the US Patent and Trademark Office (USPTO) only for the purpose of gaining leverage in the UDRP Action.

### III.    GENERAL ALLEGATIONS

*SSM's Background*

8. Plaintiff Strong Students Moving, Inc. is a Florida corporation owned by Shaun Robinson, as evidenced by the Florida Business Entity Detail Report attached hereto as **Annex A**.

9. In 2005, Robinson began doing business after registering with the Florida Secretary of State as Strong College Students, Inc.  In 2009, he reincorporated as Strong Students Moving, Inc. as the business expanded. Strong Students Moving, Inc. is a competitor of Defendant in the same Florida market, and has been for some time.

10. From 2005 to 2009, Plaintiff maintained a mutually beneficial relationship with Defendant and its principals Omar Soliman and Nick Friedman. They referred work back-and-forth, and were on good terms. In 2009, long before the Defendant to this action accrued trademark rights, the Defendant began negotiating with the Plaintiff to acquire and merge the Plaintiff's business into the Defendant's, then forming a joint venture called COLLEGE HUNKS MOVING. A term sheet crafted by the Defendant (the "Term Sheet") and forwarded by the Defendant to the Plaintiff, is annexed hereto as **Annex B**. This Term Sheet was emailed on November 11, 2009 to the Plaintiff by the Defendant's principal, Nick Friedman, in an email attached hereto as **Annex C**. Omar Soliman, who signed the Defendant's supporting declaration in this action, was carbon copied as a recipient of this email.

11. The service mark COLLEGE HUNKS HAULING JUNK is registered in the name of Friedman and Soliman Enterprises (after Nick Friedman), and Friedman is shown the email of November 11, 2009 to be the President of College Hunks Hauling Junk. Contrary to the assertions of the Defendant, the Plaintiff can find no business registration for the Defendant is either Delaware or Florida, or any d/b/a filings.

12. The Term Sheet was drafted and sent after a lengthy series of telephonic discussions over a period of time between Robinson, Friedman and Soliman.

[First Declaration of Shaun Robinson ("Robinson Decl.") annexed hereto as **Annex D**, ¶ 5.]

13. Pursuant to the terms of this Term Sheet, the Plaintiff was to change its name to COLLEGE HUNKS MOVING TRUCK, then merge its company with the Defendant's parent company. This new, subsequently formed entity would then be called COLLEGE HUNKS MOVING. [Term Sheet, ¶¶ 1 – 2.]

14. According the terms of the Term Sheet at page 2, ¶ 5 (emphasis added):

> **Sean** [sic] **Robinson shall be granted creative control of College Hunks Moving Franchising** LLC in addition to his role as the director of operations of the local Tampa Franchise. **All new moving service guidelines, operational manuals, software upgrades, training of new franchisees and call center employees will be derived under the direct supervision of the new D of O [Shaun Robinson]**, of College Hunks Moving, but must adhere to the strict brand standards of CHHJ Franchising LLC.

15. The Term Sheet lists the "website" as a cost Robinson must share on page 3, and twice specifies that the Robinson shall be a "33% Owner" in College Hunks Moving (a term identical to that incorporated by the domain to this proceeding). [Term Sheet, ¶¶ 3 and 7.]

16. According to the Term Sheet, Robinson was to be in charge of training and marketing for the business. With all of these terms in mind, planning on forming a partnership as proposed by the Defendant, the Plaintiff registered

6

the domain name underlying this proceeding <collegehunksmoving.com> (the "Disputed Domain"), with permission of the Defendant, on September 17, 2009, during the negotiations with the Defendant evidenced by the Term Sheet. It was the Plaintiff's company that was to form College Hunks Moving under the Defendant's proposal, and the Plaintiff is a good faith registrant of the Disputed Domain. [Robinson Decl., ¶ 7.]

17. Plaintiff has claims against the Defendant for failing to ever honor an interest on the part of the Plaintiff in the Defendant's franchises (as shown in the Term Sheet). The Plaintiff helped conceptualize and create the College Hunks Moving legal entity, made capital contributions and sweat equity investments in it, only to have the Defendant form and proceed with the brand while locking the Plaintiff out. It is the Defendant who is falsely asserting claims against the Plaintiff in this action. [*Id.*, ¶ 9.]

18. The Plaintiff has not used the Disputed Domain to interfere with the Defendant's business, nor would such use be enough alone be enough for the Defendant to prevail. *See Graman USA Inc. v. Shenzhen Graman Indus. Co.*, FA 133676 (Nat. Arb. Forum January 16, 2003) (finding that general allegations of bad faith without supporting facts or specific examples are an insufficient basis upon which to conclude that Plaintiff acted in bad faith); *see also Nike, Inc. v. Crystal International*, D2002-0352 (WIPO August 2,

2002) ("Assertions that any use of the Domain Name by another party would likely mislead or deceive the Defendant's customers, without evidence, is not of much use.").

### *Demonstrable Preparations to Use*

19. Paragraph 4 of the UDRP Rules specifies that a litigant under the UDRP fails in meeting its tripartite burden of proof in a UDRP case when the Plaintiff provides evidence of "demonstrable preparations to use the domain name in connection with a bona fide offering of goods or services prior to the dispute."

20. The UDRP ¶ 4(c) provides that "[a]ny of the following circumstances, in particular but without limitation, if found by the Panel to be proved based on its evaluation of all evidence presented, shall demonstrate your rights or legitimate interests to the domain name for purposes of ¶4(a)(ii): … (iii) you are making a legitimate noncommercial or fair use of the domain name."

21. The Term Sheet evidences the Plaintiff's demonstrable preparations to use the Disputed Domain for the *bona fide* purpose of forming a partnership with the Defendant, pursuant to terms proposed by the Defendant giving the Plaintiff responsibility for creating and maintaining the website.

22. The Term Sheet establishes that the Defendant deceived the USPTO with its trademark filing and UDRP Complaint (at p. 8), "Defendant has no

relationship whatsoever with Plaintiff and has never authorized Plaintiff to the Use the Domain Name." This statement is false and misleading, and constituted reverse domain name hijacking.

23. Additionally, the Term Sheet from the Defendant established that the Defendant committed fraud in procuring its Mark from the USPTO with a first-use-in-commerce date of 2007, as the Defendant admits it has not been using the mark prior to November 2009 in the Term Sheet. The Defendant's marks are invalid.

24. Plaintiff's first mark (Reg. No. 3179220) was originally filed years after the Disputed Domain was registered.

25. The Disputed Domain is not "identical" to the marks of the Defendant as alleged in NAF proceedings Defendant disclosed every detail of its marks EXCEPT the title of the marks themselves (a more than coincidental deficiency). The Defendant's first mark (Reg. No. 3179220) is a word mark for the expression COLLEGE HUNKS HAULING JUNK, not COLLEGE HUNKS MOVING. The Defendant's second mark (Reg. No. 3210015) is a stylized mark on the same expression as the first, not giving the Defendant any further protection. Finally, the third mark (Reg. No. 3993081) is a word mark which is identical to the Disputed Domain, but one that was not filed until long after the Disputed Domain was registered.

26. The Defendant did have any trademark rights identical to the Disputed Domain when it was registered, and the two COLLEGE HUNKS HAULING JUNK marks are not confusingly similar to the Disputed Domain.

27. The only similarity the Defendant's mark and the Disputed Domain share is the descriptive expression COLLEGE HUNKS, which is a term not exclusively associated with the Defendant's business.

28. The Plaintiff is a good-faith registrant of the Disputed Domain, and seeks declaratory judgment of such.

29. The Defendant had no *bona fide* basis for commencing the UDRP proceeding, and as such committed reverse domain name hijacking under the Anti-cybersquatting Consumer Protection Act (ACPA).

## FIRST CAUSE OF ACTION
## DECLARATORY JUDGMENT

28. Plaintiff realleges and reincorporates each of the preceding paragraphs as though fully set forth herein.

29. The Plaintiff registered the Disputed Domain in good-faith and seeks a declaration of this Court affirming the Plaintiff's good-faith registration and consequent invalidity of the decision and transfer order in the UDRP proceeding.

## SECOND CAUSE OF ACTION
## CANCELATION OF TRADEMARK REGISTRATIONS

30. Plaintiff incorporates by reference the allegations of the above paragraphs as though fully set forth herein.

31. This claim is for cancellation of U.S. Trademark Registration No. 3,210,015 for the alleged mark COLLEGE HUNKS HAULING JUNK pursuant to 15 U.S.C. § 1119, as well as for cancellation of U.S. Trademark Registration No. 3,179,220 (the "Marks").

32. The Defendant CHHJ procured the registration of the Marks with false allegations of material facts made to the U.S. Trademark Office during the prosecution of its application, which allegations the Defendant made intentionally and knew, or should have known, were false. Accordingly, Defendant obtained the registration through means of fraud.

33. The Plaintiff is likely to be damaged by the Marks.

34. The registration of the Marks is subject to cancellation pursuant to 15 U.S.C. § 1064.

## FOURTH CAUSE OF ACTION
## INTENTIONAL INTERFERENCE WITH BUSINESS/ECONOMIC RELATIONS

35. Plaintiff incorporates and realleges all of the foregoing paragraphs as if fully set forth herein.

11

36. Defendant has intentionally interfered with SSM's existing and potential economic relations by filing the UDRP Action and seeking to deprive the Plaintiff of its domain.

37. Defendant intentionally interfered with SSM's existing or potential economic relations for the improper purpose of:

   (a) Benefiting from the goodwill built in the Disputed Domain and SSM's IP in the form of direct traffic to the Disputed Domain; and/or

   (b) Depriving the Plaintiff of funds needing to contract with others through malicious litigation; and/or

   (c) Reselling the Disputed Domain and the goodwill SSM built into the Disputed Domain.

38. SSM has been injured as a result of Defendant's interference.

39. Defendant interfered with SSM's existing and potential economic relations through the improper means of attempting to maintain illegitimate control over the Disputed Domain, which resulted in significant hardship to SSM operations and caused SSM to lose the benefit of revenue to which SSM was entitled.

40. SSM has been injured as a result of Defendant's tortious interference.

41. SSM's sales are depressed because SSM has been forced to deal with the UDRP Action and this de novo review of it.

42. SSM is entitled to a damage award against Defendant for intentional interference with economic relations in an amount to be determined at trial, plus costs and attorney fees.

## IV.   PRAYER FOR RELIEF

WHEREFORE, on the above claims, Plaintiff prays for judgment against Defendant as follows:

1. That Defendant, its agents, officers, partners, servants, affiliates, employees, attorneys, and representatives, and all those in privity or acting in consent or participation with Defendant, an each and all of them, be permanently enjoined from:

    (a) Further use of the trademark COLLEGE HUKS MOVING JUNK;

    (b) Further attempts to acquire the Disputed Domain; and

    (c) Instructing, assisting, or abetting any other person or business entity in engaging in or performing any of the activities referred to in this paragraph and its subparagraphs.

2. That Defendant be ordered to:

    (a) Pay compensatory damages to SSM for injuries sustained as a consequence of the acts complained of;

(b) Pay statutory damages to Plaintiff of $100,000 for Defendant's violation of the ACPA reverse domain name hijacking provisions;

(c) Pay all of SSM's costs, attorney fees, and litigation expenses in recovering the Disputed Domain;

(d) Pay interest to SSM, including pre-judgment interest on the foregoing sums; and

(e) File with this Court and serve on SSM an affidavit setting forth in detail the manner and form of Defendant's compliance with the terms of this Court's orders.

3. For any other such relief as the Court may deem necessary.

DATED AND SIGNED this 30th day of May, 2012.

/s/ Loren I. Thorson 18933
_____
LOREN I. THORSON
*Attorney for Plaintiff*