**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Strong College Students Moving, Inc., a Florida Corporation; and Shaun Robinson,<br><br>Plaintiffs,<br><br>v.<br><br>CHHJ Franchising, LLC, dba College Hunks Hauling Junk, a Delaware limited liability company; Doe CHHJ 1-10,<br><br>Defendants. | No. 12-CV-01156-PHX-GMS<br><br>**ORDER** |

Pending before the Court is CHHJ's Motion to Enforce Settlement. (Doc. 37.) For the reasons discussed below, the Court denies the Motion.

**BACKGROUND**

The Parties are involved in a trademark dispute relating to Plaintiffs' registration of the domain name <www.CollegeHunksMoving.com> ("Disputed Domain"). Plaintiffs Strong College Students Moving, Inc. and owner Shaun Robinson (collectively, "SCSM") compete in the moving business with Defendant CHHJ Franchising ("CHHJ"). (Doc. 1 at 4.) SCSM registered the Disputed Domain in 2009 while negotiating a possible merger with CHHJ. (*Id.*)

After merger talks fell through, the Parties could not reach agreement regarding the rightful use of the domain name. (*Id.* at 3.) The Parties submitted their dispute to the National Arbitration Forum ("NAF") for a non-binding arbitration. (*Id.*) On May 17,

2012, the NAF issued a decision that the Disputed Domain should be transferred from SCSM to CHHJ. (*Id.*) SCSM subsequently filed this action on May 30, 2012.

On November 7, 2012, the Parties entered into settlement negotiations to resolve this matter. (Doc. 37 at 2.) During the following months, the Parties discussed terms of the settlement. (*Id.*) On January 31, 2013, SCSM filed a Notice of Pending Settlement, (Doc. 31), alerting the Court to a tentative agreement, but withdrew the Notice on February 28, 2013, (Doc. 33), because the Parties were unable to agree to terms. CHHJ moves to enforce a settlement agreement that was allegedly reached during these negotiations.

## DISCUSSION

### I.    LEGAL STANDARD

A federal district court has the inherent authority to enforce agreements that settle litigation before it. *See In re City Equities Anaheim, Ltd.,* 22 F.3d 954, 957 (9th Cir. 1994) ("This circuit also recognizes a trial court's inherent enforcement power."); *Calli v. Near,* 829 F.2d 888, 890 (9th Cir. 1987) ("It is well settled that a district court has the equitable power to enforce summarily an agreement to settle a case pending before it."). Once a settlement has been reached in a pending action, any party to the agreement may bring a motion to enforce it. *Doi v. Halekulani Corp.,* 276 F.3d 1131, 1135 (9th Cir. 2002). Our federal jurisdiction recognizes that "[t]he construction and enforcement of settlement agreements are governed by principles of local law which apply to interpretation of contracts generally." *O'Neil v. Bunge Corp.,* 365 F.3d 820, 822 (9th Cir. 2004); *see Jeff D. v. Andrus,* 899 F.2d 753, 759 (9th Cir. 1990).

### II.   SETTLEMENT NEGOTIATIONS

Under Arizona law, a contract exists once there is "an offer, an acceptance, consideration, and sufficient specification of terms so that obligations can be ascertained." *K-Line Builders, Inc. v. First Federal Savings & Loan Ass'n,* 139 Ariz. 209, 212, 677 P.2d 1317, 1320 (App. 1983). To form a binding contract, the parties must mutually assent to all material terms. *Hill–Shafer P'ship v. Chilson Family Trust,* 165

Ariz. 469, 473, 799 P.2d 810, 814 (1990). "A distinct intent common to both parties must exist without doubt or difference, and until all understand alike there can be no assent." *Hill-Shafer,* 165 Ariz. at 473. Mutual assent is determined based on objective evidence, not the hidden intent of the parties. *Id.* at 474, 799 P.2d at 815. A court may look to surrounding circumstances and the conduct of the parties to determine the parties' intent. *Johnson Int'l, Inc. v. City of Phoenix*, 192 Ariz. 466, 471, 967 P.2d 607, 612 (Ct. App. 1998).

CHHJ contends that the Parties had reached a settlement agreement and agreed to memorialize it in writing. The Restatement (Second) of Contracts § 27 cmt. a (1981) explains that if parties "agree upon all the terms they plan to incorporate" into a final written instrument and agree "to execute subsequently a final writing . . . [that] contains these provisions and no others, they have then concluded the contract." However, "if either party knows or has reason to know that the other party regards the agreement as incomplete and intends that no obligation shall exist until other terms are assented to or until the whole has been reduced to another written form, the preliminary negotiations and agreements do not constitute a contract." *Id.* at cmt. b; *see also Ry-Tan Const., Inc. v. Washington Elementary Sch. Dist. No. 6,* 210 Ariz. 419, 421, 111 P.3d 1019, 1021 (2005) (noting that Arizona has adopted § 27).

The Parties entered into negotiations to settle this suit on November 7, 2012. After discussing terms, on January 23, 2012, CHHJ offered to settle if SCSM ended its suit and transferred the Disputed Domain to CHHJ in exchange for $15,000 and a commitment not to use the Disputed Domain for a period of six months after the agreement. (Doc 37-1 at 8.)  CHHJ made their offer "subject to working our [sic] the appropriate terms and conditions." (*Id.*) On January 28, 2013, SCSM's counsel responded: "We'll go ahead and accept this settlement and transfer the domain. If you want to go ahead and prepare the settlement docs, that would be great." (*Id.*) He cautioned CHHJ: "Please don't try to put any new terms into them however." (*Id.*) Although the Parties agreed in principle to the material terms of the settlement and consideration thereof, SCSM had reason to know

that CHHJ did not intend to be bound until the terms were further negotiated and ironed out in writing. The terms discussed during these preliminary negotiations did not constitute a settlement agreement.

Further evidence of communications between the Parties supports such a finding. After SCSM accepted CHHJ's conditional offer, the Parties had an exchange on January 30, 2013, highlighting the importance of the formal writing. CHHJ's counsel asserted: "we intend to fully protect our clients with the language in the Agreement . . . . [I]t appears that we could have difficulty with the inclusion of necessary language in the agreement." (*Id.* at 7.) SCSM's counsel responded:

> [A]s for the settlement scope and terms, let's all keep our eye on the ball. We all want this done, we all want clarity and finality and protection for our respective clients. The material terms, domain transfer, $15,000 and 6 months before use of the domain are already agreed. I look forward to committing the deal to paper so our clients can go their separate ways in peace. Thank you, [CHHJ's counsel], for taking the first crack at it.

(*Id.*) On January 31, 2013, SCSM filed a Notice of Pending Settlement, (Doc. 31), stating: "the Parties have reached a tentative settlement [in the suit]. The Court will be notified when such pending settlement is finalized." In fact, CHHJ's counsel admonished SCSM's counsel for filing the Notice "when the terms were not agreed to in final." (Doc. 41-1 at 2-3.) Thus, the Parties had only engaged in preliminary negotiations and at most decided to settle but did not form a binding agreement.

## III.  REJECTION OF SETTLEMENT OFFER

On February 5, 2013, CHHJ's counsel distributed a first draft of the written settlement agreement to SCSM to review and approve. (Doc 37-1 at 15-18.) In the draft, CHHJ included a clause stating: "SCSM and Shaun Robinson shall: (A) Cease and desist any use of the COLLEGE HUNKS Marks or any mark, trade name, or domain name that incorporates the term "COLLEGE HUNKS" or colorable variations thereof, including the domain name <www.CollegeHunksMoving.com> identified above." (*Id.* at 15.) SCSM contends that this was the first attempt by CHHJ to include "such a broad restriction of

the SCSM's ability to use the words 'College Hunks.'" (Doc. 41 at 4, ¶ I(A).) The Parties continued negotiating the agreement language as SCSM raised concerns about the scope of the prohibition on using the phrase "College Hunks." That sticking point became the death knell for the settlement negotiations. On February 22, 2013, CHHJ rejected SCSM's revision of clause I(A), among other revisions. It provided an ultimatum to SCSM to accept the agreement and the terms therein, "[o]therwise inform the court that the parties are no longer working toward settlement." (Doc. 41-1 at 2.) SCSM did not execute the agreement. On February 28, 2013, SCSM filed a Withdrawal of the Notice of Settlement, (Doc. 33), stating: "the parties were unable to agree to suitable terms reflecting the scope and nature of the agreement and there is no settlement at this time."

The preliminary negotiations before the Parties drafted a written settlement agreement did not result in a binding contract. Further, the Parties could not agree on the scope of the agreement as drafted and did not execute it at any point thereafter. Accordingly, the Court will not enforce the settlement.

**IT IS HEREBY ORDERED** that CHHJ's Motion to Enforce Settlement (Doc. 37) is **denied.**

Dated this 29th day of July, 2013.

*A. Murray Snow*
G. Murray Snow
United States District Judge